Our third argument of the morning is in Appeal No. 25-19-10, Jerome Davis v. The City of Chicago. Ms. Simpson, nice to see you. Whenever you're ready. Good morning. Thank you, Your Honor, and may it please the Court. Chicago impounds cars and refuses to release them unless their owner prepays a penalty not yet owed. The penalties imposed on plaintiffs here were done without regard to whether they were legally responsible for the underlying offense. We've raised a few constitutional theories here, and the straightforward approach is due process. Government cannot hold a car as leverage to coerce an owner to prepay a penalty they don't yet owe. That's the fundamental flaw of Chicago's system. It seizes cars and holds onto them for months, simply to coerce payment. The general rule is that final judgment must come before a penalty. There's a long line of Supreme Court precedent on this. Grupo Mexicano traces the rule back to Chancellor To escape this rule, the City points to forfeiture. But that exception simply does not apply here. In the narrow world of forfeiture, government can hold property pre-judgment. 8850 deems this an extraordinary situation. Should we first take a, before we go down and do process, I don't want to lose this point. The plaintiffs, in regards to the initial seizure, are they challenging just the Fourth Amendment question? No, Your Honor. We do not challenge the initial seizure. Okay. Thank you. While we're on the scoping point, and believe me, we'll let you get back to your presentation here. Do we have a substantive due process claim before us, or is it just procedural? Your Honor, this is just a procedural due process claim. This is about the procedures that the City of Chicago has imposed on its impoundment program, and at what point in those procedures the City takes the car, and what has to come first before they can do that, and what actually comes first in terms of the sequence of events. Okay. And so the procedural challenge is to the prepayment requirement. Yes, Your Honor. Yeah. Okay. I understand. Thank you. And it's limited to the administrative fees? No, Your Honor. It's to both the intersonim penalty as well as... Well, no, I take that back. So I suppose the due process claim that we are advancing is challenging the City's demand that you prepay this penalty that has not yet been... That's what I want. Okay. Yes. I apologize for misspeaking. And so in the narrow world of forfeiture, as I was saying, the government can hold property prejudgment, but the general rule prohibits seizure of property without a prior court ruling. Footnote 12 of 8850 addresses this. But even in the forfeiture realm, this deviation from the general rule is controversial. Both Justices Gorsuch and Justice Thomas had concurrences in Coley writing about this and talking about the general rule, and Justice Gorsuch's concurrence talked about why forfeiture's historical roots allow it to be an average. Do you think it has now somewhat overcome the general rule in the concurrence when Justice Gorsuch was outlining Almaty Law, where we had seen this, Pirate Customs, and now we've kind of... Have we... The balancing... Your Honor, I don't think the exception has swallowed the rule. And I think that the City's suggested approach does allow the exception to swallow the general rule. But the general rule, as I said, goes back more than decades. It goes back centuries, and that judgment must come before the government takes the penalty, before the government imposes the penalty. And so this general rule shows that the City's demanding payment before judgment is unconstitutional. And how do you address the majority opinion in Coley? So again, Your Honor, what's going on in Coley is forfeiture, which is that exception to the general rule. And so the Supreme Court has authorized forfeiture with its unique historical background and its focus on pirate ships and going after that as an exception to the general rule. But even the forfeiture cases themselves identify that the general rule is judgment first, that the order of operations is important. This isn't a ready fire aim situation, but a ready aim fire situation. And so the answer is for the City to treat its impoundment penalties as it does any other civil violation, where it obtains judgment in its favor first, and then it can seek to collect. An alternative approach, I think, to the general rule is the Matthews v. Eldridge framework. So the first prong under that is the private interest in cars and money. As the District Court found below, this factor is in favor of the plaintiffs. People have a very significant interest in their cars, their ability to get to work, to school, the doctor, and otherwise around town. And, of course, money is at issue, too, and that is of critical importance. I wanted to make sure. So Culley, was the representation that it was not in the civil forfeiture context? No, Your Honor. Culley was limited to the forfeiture context. And so that was a forfeiture scheme that the plaintiffs there challenged unsuccessfully. But again, it was the critical aspect of that is that forfeiture is an exception to the general rule, as Justice Gorsuch talked about in his concurrence. Yeah. And so the second prong under the Matthews v. Eldridge framework is this risk of erroneous deprivation. And here, that risk isn't just existent. It is certain. A creditor has absolutely no interest in property before judgment. The entire time that the city possesses a car here without a judgment, it is erroneously depriving the owner of their property. The District Court found for the city here, because it deemed this preliminary hearing and the procedures acceptable. But we know from Grupo Mexicano that a preliminary hearing doesn't absolve the government of its responsibility of obtaining a judgment before it can act. And on the practical side of things, these preliminary hearings aren't actually happening that quickly. Only one of our clients had a quick preliminary hearing. Another one had his preliminary hearing six months after his car was seized. And two of our other clients didn't have a preliminary hearing at all. And it took months to go through this process where the city held their vehicles for activity that they, for crimes that they did not commit. So that's despite the fact there is a time limit, right, in the ordinance itself for the hearing? So, yes, Your Honor. The ordinance talks about the time limits and it identifies a situation where these progress relatively quickly. But we know from the record and how it's actually implemented on the ground that that just isn't happening. As I said, only one of our clients had a preliminary hearing within just a few days of the impoundment. The rest of them either didn't get one at all or didn't have one, like Mr. Berg didn't have his hearing until December of 2016, though his car was impounded in June of 2016. And so that's a six-month period before he gets in front of someone in the administrative hearing procedure to contest the city's holding of his car. And so that is the opposite of the way that the general rule operates. When we're looking at this procedural challenge, in particular that in the city we have both the preliminary hearing, which is deemed not required, but I wanted to hinge on a little bit the notice component. And I believe that a few, maybe two or three of your clients questioned or challenged whether or not they had received proper notice. So, Your Honor, we have not appealed the notice issue to this court with our current plaintiffs. I think that the Davises, we have raised an allegation in the complaint about the Davises that they did not receive notice. We don't believe that their claims are precluded and should this court reverse on the claim preclusion issue, we would want to press that below and get into discovery on that issue. But the other notice issues with the plaintiffs we have not brought to this court. Can I ask you a question about the claim brought under the Illinois Constitution? Please. The proportionate penalties clause. To your knowledge, has the Illinois Supreme Court ever applied the clause, and I'm thinking, I know there was a little bit of ambiguity before the 1970 amendment, but after the 1970 amendment, has it ever actually applied the clause and awarded relief to a party in a civil case? Not since the 1970 Constitution, Your Honor, but I don't think that that is dispositive because the 1870 version applied to civil penalties and the Illinois Supreme Court did apply it in that way. So we cite those cases in our reply brief at pages 11 to 12, and I point this court specifically to Chicago and ARCO v. Korner, which is one of the cases. The reason I'm asking that, I'm interested in what your adversary has to say about that. When you read the clause, it sure looks like its application is only in the criminal domain. It talks about an offender, and I know it's got a reference in the title, and you're going to say titles aren't substantive provisions in that way, but it's very odd to me that if that's put in the Illinois Constitution in 1970, fines and penalties and monetary sanctions, as we all know, are an everyday event of life, that we would be sitting here in 2026 uncertain as to whether it applies in the civil context. It's just odd. So Your Honor, I would say that when the founders adopted the 1970 Constitution, they took the language from the 1870 Constitution, and they tweaked it a little bit, but the Illinois Supreme Court said in its decision in Sharp that it was not intended to change the meaning, and so I would add that to the older cases that did apply. But to your point that pre-1970, we can actually find examples of civil monetary sanctions being held unconstitutional in civil cases. Yes, Your Honor, and those are the cases we cite in our reply brief at pages 11 and 12. And so I would say that the text of the language, it says all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. All penalties, by my read, is all penalties, whether civil or criminal. It's any time the government seeks to penalize its citizens. And a quick word I'd like on the Fourth Amendment, and so the question there is whether the government can lawfully hold personal property for ransom in order to collect a debt. This Court's decision from 2003 in Lee says that yes, because the Fourth Amendment doesn't apply after that initial property seizure. That decision, I think, has been undercut by the Supreme Court's decision in Manuel, and this Court's decisions in Conyers and Carter, which have come since Manuel, don't really grapple with those differences. The D.C. Circuit in Asinore really spent a lot of time going through the text and the history and the precedent to reach the opposite conclusion of this Court's holding in Lee. And there is an active circuit split on this question, and we'd urge this Court to overrule its precedent and align itself with the D.C. Circuit, the Ninth Circuit, and now the Third Circuit, which has weighed in recently. Can I take you back to the proportionate penalties clause?  Why was it error in absence of a lot of Illinois guidance on this clause for the district court to look to Towers and infer, even though the clause is different, infer as much as it could from Towers to decide the question there? So, Your Honor, the proportionate penalties clause wasn't at issue in Towers, which I recognize you've just pointed out. But I think if you look to, again, that language, the history of it applying to several penalties, the language of the ordinance, I think that to restrict it just to a criminal application really limits the language of the Constitution in a way that the Founders didn't intend, and that the Constitution is supposed to be outwardly protective. And the district courts not finding in the favor of the plaintiffs there, I think, conflicts with the proportionate penalties clause, the way it's applied and the way it's intended to apply. On the claim preclusion front, the Davises, they are not claim precluded. Their agreed dismissal with the city was silent as to whether it was with prejudice, and I think the Illinois courts are very clear that silent documents as to dismissal are without prejudice. So that means that their dismissal was without prejudice, that means that they are not precluded on appeal court. Counsel, before we go into your rebuttal time really quickly, can we touch on the excessive fines argument as to whether or not, I know we have a Towers case, and where we are, 500, and now we're 1,000 to 2,000. Can we talk a little bit about the argument regarding excessive? Yes, Your Honor. I think the question under the excessive fines clause is whether the government can design a system that assesses penalties without regard as to whether the recipient was legally responsible for the underlying offense. And so even with Towers' holding, we see that as an as-applied holding, that it leaves room for this facial ruling that a system that is designed to not ask the question at all about whether the owner was legally responsible simply cannot survive the excessive fines analysis. And so the city's impoundment system operates on this premise that an owner should be penalized without ever stopping to ask if they were responsible for that underlying offense, and that simply cannot survive the excessive fines clause. Are you seeking declaratory or injunctive relief? At this point, I don't think so, Your Honor. I think most of our relief is backward-looking. The city has since amended its ordinance, and it's not perfect in its amendment, but I think at this point, most of our relief is backward-looking. Okay, and how does that align then with the notion that there's a facial claim? Because most of the time, right, if you'd say, you know, X statute is facially invalid, it doesn't tend to come in the case where the judgment is awarding money damages. It tends to come in the form of, like, declaratory relief and or injunctive relief. So, yes, Your Honor. However, I think facial relief is just a question of how broad you can write the statute, and the system still suffers from that same flaw that it did then. It has not, well, I suppose it's imperfect, and I don't want to address it too much. Well, there's been, so I don't know if, what you may have, there's been some amendments to this, right? Or modifications. Yes. Is that in, what, 24, 25? In 2020, yes. Okay, but none of that's before us. We're in the kind of older regime, if you will. Yes, Your Honor. Okay. Okay, we'll give you some rebuttal time. Thank you very much. You're welcome. Okay, Mr. Smith, nice to see you. Good morning. May it please the Court. There are several constitutional challenges at issue in this appeal, but the city's position is simple. Each of these claims is squarely foreclosed by the precedent of this Court, the United States Supreme Court, or the Illinois Courts. I'll begin my argument by addressing the claims about the holding of plaintiff's vehicles, then I'll move on to the two penalties-related claims, and if I have time, I'll also address the dismissal of the Davis' claims as race judicata. So to begin with the holding claims, plaintiffs first argue that the holding of their vehicles pending a final judgment at the Department of Administrative Hearings violated due process. Notably, the city's impoundment ordinance creates a whole lot of process for owners of impounded vehicles. There are multiple forms of mandatory notice, and discovery did show that all of the plaintiffs who moved into discovery did receive notice, and therefore those claims are not on appeal now. There's also the initial probable cause hearing, available as soon as the next business day after impoundment, and the final hearing on the merits. Regarding the timeline of those hearings, I would note that there are timelines in the ordinance, and those hearings are kicked off when a plaintiff requests them. So plaintiffs noted that there was a delay in when some of the hearings were held. That's down to when the plaintiffs actually came to the Department of Administrative Hearings and initiated the process, and even though they did so outside the timelines allowed, the department still allowed them to go through the hearing process anyways, so there is even some flexibility there afforded to the vehicle owners. Now displace... So is that to say that if this happened to me as a car owner, I could say I'd like my preliminary hearing tomorrow, and then I show up at the hearing center and I have my hearing? Yes, Your Honor, in general. Or can I just show up and get the hearing? You can just show up and get the hearing. There are timelines. There are, you know, a default judgment may be entered, but there's a mechanism for setting that aside. That actually happened in Plaintiff Nelson's hearing process, so, you know, even outside the timelines prescribed, it is possible to come and get a hearing. We can see that in the record here. And despite all of that process, plaintiffs insist that the city is basically engaged in vehicular hostage-taking. If that can even be construed as sounding in procedural due process, we think it squarely fails under Culley v. Marshall, which established that owners of impounded vehicles are entitled to no more process than that final hearing on the merits. And again, we already exceed that constitutional minimum by also offering the initial probable cause hearing. And as plaintiffs discussed in their argument, their only basis for not applying Culley here is the argument that it involved in-rem forfeitures instead of in-personam proceedings. The city's proceedings are in-personam, at least to the extent that they involve the imposition of fines against the owners. But that's an argument that this court considered head-on and rejected in Towers. Towers rejected a substantive due process claim to this very ordinance, and in doing so relied on Bennis v. Michigan, a forfeiture precedent. For purposes of that analysis, this court held that the in-rem, in-personam distinction was immaterial, and that's for two reasons. First, both a forfeiture scheme and then the city's impoundment system involve an economic penalty against an owner because her property was used unlawfully. And both systems involve the government's well-settled interest in deterring vehicular misconduct. So basically the interests are the same on both sides of the ledger. And so just as the Towers court applied Bennis, this court should apply Culley here, which is directly on point and a firm judgment on the due process claim. There's also the Fourth Amendment challenge to vehicle holding. I would simply note that this court has reaffirmed Lee pursuant to which the claim was dismissed time and again, including just last summer in that Carter v. Cook County Sheriff decision. Carter v. Cook County Sheriff even rejected the contention that a proper historical analysis was not undertaken in Lee, and the Supreme Court went on to deny certain in that case. So at bottom, Lee remains good law on the circuit, and for that reason, the dismissal of the Fourth Amendment claim should be affirmed. I'll move now to the two fines claims. Those are the... Oh, yeah. Go ahead. Those are the excessive fines claim under the federal constitution and the proportionate penalties claim under the Illinois constitution. The excessive fines claim was properly dismissed pursuant, again, to this court's decision in Towers. And one piece of context I would like to note here, which I think was also important in Towers, is that counsel noted the ordinance has been amended. There's now a form of, quote unquote, innocent owner defense. There was not when plaintiff's vehicles were impounded, but there was a defense applicable when a vehicle was stolen. There's no allegations and no evidence in this case that any of the plaintiffs reported their vehicle stolen or attempted to invoke that defense. And so we know at a minimum that each of the plaintiffs here are owners who voluntarily granted third parties access to their vehicles. And I think that dovetails squarely with the analysis in Towers, which said, in essence, there's an inherent risk when one grants a third party access to one's vehicle. And if that risk materializes by the third party going off and doing something unlawful with the vehicle, the owner bears some culpability for purposes of the Eighth Amendment excessive fines analysis. And that... Yes, Your Honor. I take your argument. It seems to... I know we have some procedural issues with the Davises, of course, but in a case like that where they take their car to the body shop, your argument seems to have less force. Or if one of us left our car with a valet driver at a restaurant who then took it for a joyride. I mean, that argument seems to have less force. But if we shift to the Illinois Constitution part of this argument that you're starting, why should we look to Towers' Eighth Amendment analysis when the Illinois Supreme Court has told us that we don't have a lot of case law, but the little case law we have on this part of the Illinois Constitution tells us that the Proportionate Penalties Clause sweeps broader than the Eighth Amendment. So why was it appropriate for the District Court to just solely focus on Towers as supplying the answer? And particularly where the plaintiff in Towers did not raise an Illinois Proportionate Penalties Clause claim? Yes, Your Honor. I have two responses there. First, we know the Illinois Supreme Court found this court's analysis in Towers persuasive. So we have the Linzeris case from the Illinois Supreme Court that was also a case involving a number of challenges to the city's impoundment ordinance. Not a proportionate penalties challenge, but nonetheless, the court favorably cited Towers there and even flagged the portion of the Towers analysis about unwitting owners nonetheless contributing to the spread of narcotics and contraband in their communities. So I think that gives at least some reason to think that the Illinois Supreme Court would buy into this court's analysis in Towers if there was a proportionate penalties claim before it. You stake out a broader position, if I'm not mistaken, that it just has no application in the civil domain. Yes, Your Honor. And that's the next point I wanted to raise. Simply put, there's no case since the modern Illinois Constitution was enacted 56 years ago applying the clause in the civil context. And in fact, we have the People x Rel Burkitt v Konecki decision, which says that the clause applies only, and that's emphasis on the court's use of the word only, to the criminal process where the government acts to inflict direct punishment. And I do recognize that, so there's been some interplay about the overlap of that clause with the Eighth Amendment. Konecki stated that the clause was a one-to-one analog with the cruel and unusual punishment provision of the Eighth Amendment. Later, the court said that the state proportionate penalties clause was a little broader in that it also takes into account rehabilitative goals. So we know basically, putting Konecki in them, that's the Clemens decision we cite from the Illinois Supreme Court, that the clause is something like an analog to the cruel and unusual punishment clause with perhaps a little added emphasis on rehabilitative goals. Nothing in any of those decisions states that the clause is also an analog to the excessive fines clause of the Eighth Amendment, which is how plaintiffs are attempting to use it here. Well, it confused me, Mr. Smith, about the, I totally understand the position that you set forth in your brief that Konecki seems, I mean, Konecki literally says it applies only to criminal process. But what I don't understand is why, in the district court, the city assumed that it has application in the civil context. It doesn't make any sense to me. At least at the summary judgment stage, Your Honor, we did argue in that brief that the clause does not apply in the civil context. We did develop that argument at summary judgment. I believe the district court assumed for purposes of the analysis that the clause applies, but if you take a look at our summary judgment briefing, we did advance that argument, and the court did not accept that argument. She went on to the substantive application of the clause. So the legal, I just want to make sure I'm clear on this. Is the legal position before us that the clause has no application whatsoever in the civil context? It doesn't matter how excessive, it doesn't matter how disproportionate. You cannot hypothesize the civil circumstance where the clause has application. That's our position. I mean, as Your Honor noted, there are a whole lot of penalties assessed in different contexts by the government. In 56 years, not a single Illinois court has ever even considered the validity of one of those under the proportionate. It just surprises me. I mean, a lot of things surprise you up here sometimes, but it surprises me that we're already to 2026, and we don't have a question on a clause that you would think comes up in litigation or you would expect to come up with some regularity. Yes. I mean, we do have the decisions that we cite, like People v. Bachman and People v. Rizzo, where things like registration requirements or license suspensions that were related to a criminal conviction but were not directly part of the sentence were found to not fall within the ambit of the clause. So we have those decisions, at least, and again, I would just cite the absence of any decisions to the contrary. I would also briefly note that those pre-1970 cases even don't go as far as the plaintiffs say. So there's the Chicago A&R decision from 1873 that they cite in the reply brief. That decision was about discriminatory pricing by railways, and that was the substance of the ruling. The fines under the statute amounted to millions of dollars, and that's without adjustment from 1873 money. All the court said in a single paragraph in dicta was that, you know, those millions of dollars, which would be many, many more millions today, could violate the spirit of the proportionate penalties clause. So it was just sort of this side observation. But they didn't actually invalidate any fines. Yeah, that's my question. Do you know, pre-1970, do you know of any example where a civil monetary sanctioned fine penalty, term it however you want, was actually invalidated in the name of the pre-1970 version of the clause? I do not, Your Honor. All the other cases cited, the Hayes Freight Lines, Baltimore OSWR, and Chicago RINPR, all the plaintiffs cited by, all the cases cited by the plaintiffs actually rejected arguments that the fine should be invalidated under the clause. So even if you look pre-1970, we don't have a case actually invalidating a fine under the clause. So, you know, our basic position here is that the excessive fines claim fails under Towers. The facial challenge makes little sense in light of the fact that there is only retrospective relief at issue here, which would be on the individual claims, one would think. I'm not sure, you know, if there's no injunction or declaratory relief on the table, what the facial challenge would even be about. So that's an additional problem with the claim. And as to the proportionate penalties claim, we think that the clause doesn't apply. But even if it did, I think the Linzeris Court's citation of this court's analysis in Towers would suggest that the substantive claim would be rejected by the Illinois courts anyways. Finally, I'll just address dismissal of the Davis's claims as race judicata. There's no dispute here that the Davis's brought state court challenges to the impoundment of their vehicles, that the state case was resolved through a settlement agreement, and that the state circuit court adopted the agreement. That agreed order of settlement is in the record. It sets forth the settlement terms and dismisses the case and was signed off on by the state circuit court. Now, this court in 4901 Corporation, which we cite in our brief, collected Illinois authorities, specifically stating that a Illinois state court's adoption of a settlement agreement in dismissing a case is a final judgment for race judicata purposes. And in fact, it's the equivalent of a judgment entered after contested litigation. Plaintiffs mentioned in their view that a instrument that's silent as to whether it's with prejudice should be construed as without prejudice. But that's actually not the rule for judgments that are the equivalent of, you know, a judgment entered after contested litigation. We know that from the Richter case we cite, where if a court, you know, dismisses a case or enters summary judgment or something like that, and the dismissal order or the judgment is silent, it should be construed as being a dismissal with prejudice and being a final judgment for race judicata purposes. So we think those authorities squarely resolve any claims raised by the Davis's. We do think they would have some of the same substantive issues we've raised in any case. I see I'm essentially out of time here. I would rest on our briefing on the other statute of limitations. Can I just ask you a quick question? And you're not going to be bound by this. You made a reference earlier to the amendment to the statute or the ordinance. I'm sorry. Yes, Your Honor. Is it your understanding that under the new regime, under the new ordinance, that a car owner, a vehicle owner can show up at the preliminary hearing, the probable cause hearing, and assert an innocent owner defense? Or does the vehicle owner have to wait until the so-called merits hearing? No, Your Honor. The vehicle owners do have a freedom at either hearing to show up. They can submit evidence and testimony. So it's actually more than, say, like a Gerstein hearing. Even the initial probable cause hearing is a contested hearing. And defenses can be asserted at either of those hearings. That's what the record reflects in this case. So, you know, the upshot is the owner doesn't have to wait through the whole process to raise some of these defenses. They could come in and raise a defense at that preliminary hearing and have their vehicle released if, you know, the defense succeeds. So beyond all that, if there's no more questions, I just respectfully ask this court to affirm judgment in all respects. Thank you. Okay. You're quite welcome, Mr. Smith. Ms. Simpson, yeah, you, we'll give you your two minutes for rebuttal. Thank you. I appreciate it. You're welcome. The first point I'd like to make is that the city said that all of these claims were squarely foreclosed. And that simply isn't true. And as I said, the most straightforward approach is due process, and due process is not foreclosed here. The city is asking for an extension of the forfeiture exception to the holding of cars that otherwise falls under the general rule. If Chicago had created a historically rooted civil forfeiture scheme under which cars were subject to in-rim forfeiture, then we might be in that forfeiture exception and the Coley Territory. But the city hasn't done that. And under the scheme it has adopted, it demands judgment before, it demands payment before judgment and transferring title doesn't distinguish, I'm sorry, doesn't decrease or extinguish that penalty. So that is actually quite different from forfeiture in the sense that the penalty exists even if the city gets your car at the end of it. And they can sit there and collect on that judgment for as long as they'd like. So the question here isn't whether this is close enough to an in-rim forfeiture of a pirate ship, but rather whether this is a deprivation of property without due process of law, and whether it does that when the government holds onto your car to strong arm you into paying an in person and penalty that you have not been adjudicated liable for. And the city talked about how there's lots of process, but again, the fundamental due process problem is that government can't hold onto your car to coerce prepayment of penalties that are not yet owed and may never be owed. I'd point this court to the Southern District of New York's case, Harrell, which we cited in our briefing, that addresses this exact question with a very similar kind of impoundment scheme and finds it unconstitutional. On the question of timeliness, the excessive forfeiture clause was not incorporated until 2019. And so sometimes these issues do take a while to hash out, even though the proportionate penalties clause may not have been applied in that way in a long time. And those cases that I cited took as a given that the proportionate penalties clause applies. So we would respectfully ask that the judgment below be reversed. Thank you. You're quite welcome. Ms. Simpson, thanks to you and your colleagues, Mr. Smith, to you and the city as well. We'll take the appeal under advisement.